IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SCOTT EKLEBERRY**, <br><br> 124 South 8th Street <br> Upper Sandusky, OH 43351 <br><br>        **PLAINTIFF**, <br><br>   v. <br><br> **SAM DONG OHIO, INC.**, <br><br> C/O Statutory Agent <br> Realassist, Inc. <br> 50 North Sandusky Street <br> Delaware, OH 43015 <br><br>        **DEFENDANT**. | CASE NO. 2:21-cv-05200 <br><br> JUDGE MICHAEL H. WATSON <br><br> MAGISTRATE JUDGE CHELSEY M. VASCURA <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Pursuant to the Court's Opinion and Order issued April 21, 2022 (ECF No. 14), Plaintiff files this First Amended Class Action Complaint and states as follows:

### I.    NATURE OF THE CLAIMS

1. This is a class action lawsuit for systemic violations of the Fair Credit Reporting Act (FCRA) and invasion of privacy. Plaintiff Scott Ekleberry worked for Defendant Sam Dong Ohio, Inc. from January of 2018 until October of 2018. He was a Quality Engineer at the company's manufacturing facility in Delaware, Ohio. Prior to Defendant hiring Mr. Ekleberry, it had him sign a purported "Applicant Authorization and Consent for Release of Information." This form stated that Defendant "may" obtain a background check report on Mr. Ekleberry using a third-party vendor named Employment Screening Associates (ESA).

2. Defendant later terminated Mr. Ekleberry's employment for reasons that violated both the Americans with Disabilities Act (ADA) and Ohio Revised Code Chapter 4112. As a

result, Mr. Ekleberry filed a lawsuit in the Court of Common Pleas for Delaware County, Ohio alleging various claims for disability discrimination. On July 1, 2021, during the pretrial discovery phase of the state court case, Defendant produced a background check report it had obtained regarding Mr. Ekleberry. Prior to July 1, 2021, when Defendant produced this report in discovery for the state court lawsuit, Mr. Ekleberry had no idea that Defendant had procured the report. No one had ever told him Defendant had procured the report. No one had ever given him a copy of the report.

3. The FCRA, however, has a statute of limitations that incorporates a "discovery rule." Lawsuits for violations of the FCRA may be commenced up to two years after the plaintiff discovers the violation, up to a maximum of five years from the violation. Here, Mr. Ekleberry did not discover the violations until July 1, 2021, when he first received a copy of the background check report and uncovered its existence.

4. The form that Defendant used to purportedly authorize the background check for Mr. Ekleberry violated the FCRA's so-called "stand-alone" provision. It therefore constituted an invalid authorization, resulting in both an FCRA violation and a common law invasion of privacy when Defendant procured the background check report. The "stand-alone" provision of the FCRA prohibits authorization forms from including anything except the FCRA's required consent and disclosures. This includes prohibiting the inclusion of liability releases. Defendant's form used with Mr. Ekleberry included illegal releases of liability.

5. Defendant's form also violated the requirements for "investigative consumer reports." Here, Defendant procured such a report by having its third-party vendor interview Mr. Ekleberry's employers to obtain the details of his employment with them. But, before doing so, Defendant failed to clear and accurately disclose to Mr. Ekleberry that it may seek a report on his

character, general reputation, personal characteristics, and mode of living. Furthermore, Defendant failed to provide a summary of Mr. Ekleberry's rights under the FCRA at the time it had him sign the purported authorization for the investigative consumer report. As a result, Defendant obtained an invalid authorization, again resulting in both an FCRA violation and a common law invasion of privacy when Defendant procured the background check report.

6. Finally, Defendant's violation of the FCRA and its invasion of privacy was systemic. Defendant procured background check reports on around 125 employees or more using the same illegal authorization form and lack of disclosures.

7. Accordingly, Mr. Ekleberry now files this civil action. He seeks to recover for the harm he has suffered, to punish Defendant for its conduct, and to deter Defendant from ever perpetrating its conduct against any other person.

## II. JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims made under federal law because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

9. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims made under state law because those claims are so related to federal law claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

10. Pursuant to Ohio Revised Code Sections 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over Defendant because it is a resident of, and has continuous and systematic contacts with, the State of Ohio.

11. Pursuant to 28 U.S.C. § 1391, this Court is the appropriate venue because the Southern District of Ohio is the judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

12. Pursuant to Rule 82.1 of the Local Civil Rules of the United States District Court for the Southern District of Ohio, the Eastern Division is the appropriate division because it serves the counties in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

### III. PARTIES

13. Plaintiff Scott Ekleberry ("Plaintiff" or "Mr. Ekleberry") is a natural person who is a resident of Wyandot County, Ohio. Defendant Sam Dong Ohio, Inc. employed Mr. Ekleberry from January of 2018 up until Defendant fired him on October 29, 2018.

14. Defendant Sam Dong Ohio, Inc. ("Defendant Sam Dong" or the "Company") is a for-profit corporation that incorporated in the State of Ohio and has its principal place of business in Delaware County, Ohio. Defendant Sam Dong manufactures wiring for electrical and electronic products.

### IV. FACTS

#### A. Plaintiff's Employment with Defendant

15. In January of 2018, Mr. Ekleberry began working for Defendant as a Quality Engineer at its manufacturing facility in Delaware, Ohio.

16. Prior to hiring Mr. Ekleberry, Defendant had him sign a purported authorization to conduct a background check (the "Purported Authorization").

17. A true and accurate copy of the Purported Authorization signed by Mr. Ekleberry is attached as Exhibit 1 to this Complaint.

18. Prior to Defendant hiring him, and throughout his employment with Defendant, no one ever gave Mr. Ekleberry a copy of the Federal Trade Commission's (FTC) or the Consumer Financial Protection Bureau's (CFPB) document entitled, "A Summary of Your Rights Under the Fair Credit Reporting Act," or anything like it (the "FCRA Rights Document").

19. Mr. Ekleberry found the Purported Authorization to be vague, confusing, and a bunch of type in small font. He also found it to contain a lot of "legalese." Mr. Ekleberry did not believe he was authorizing Defendant to inquire with his current or former employers including about any details of his employment, such as rate of pay, supervisor, and reasons for leaving. He found the release language to be confusing "legalese."

20. If the release language had not been in Exhibit 1, if Exhibit 1 had been less vague and more specific, and/or if Mr. Ekleberry had received a copy of the FCRA Rights Document, he would not have signed Exhibit 1. Mr. Ekleberry was currently employed at the time he applied to work for Defendant. He did not need to risk that employment by applying to work for Defendant and having a background check report obtained that resulted in an inquiry to his current employer about the details of his employment there.

21. Prior to Defendant hiring him, and throughout his employment with Defendant, no one ever told Mr. Ekleberry that Defendant had procured a background check report on him.

22. Prior to Defendant hiring him, and throughout his employment with Defendant, no one ever gave Mr. Ekleberry a copy of any background check report.

**B.    Defendant Unlawfully Terminates Plaintiff's Because of His Disability**

23. Mr. Ekleberry suffers from a disability known as Crohn's Disease. This is an inflammatory bowel disease that causes Mr. Ekleberry to suffer symptoms such as abdominal pain and cramping, severe diarrhea, and fever. These symptoms, in turn, substantially limit Mr.

5

Ekleberry's major life activities during periods of inflammation, including, for instance, the activities of working, walking, running, and other physical activities.

24. In April of 2018, Mr. Ekleberry had a flareup of his Crohn's Disease. It led him to be hospitalized. He informed his supervisor, Mark Watkins, of his Crohn's Disease and how it was affecting him and requiring hospitalization. Mr. Ekleberry also requested leave under the Family and Medical Leave Act (FMLA) for his Crohn's Disease, submitting FMLA paperwork. Defendant denied FMLA leave because Mr. Ekleberry had not yet been employed for one year.

25. In October of 2018, Mr. Ekleberry had a flareup of his Crohn's Disease. It led him to be hospitalized. He informed his supervisor, Mark Watkins, of his Crohn's Disease and how it was affecting him and requiring hospitalization.

26. At various times during his employment, Mr. Ekleberry informed his supervisor, Mark Watkins, that he would need time off for doctor's appointments for his Crohn's Disease.

27. On Monday, October 29, 2018, Mr. Ekleberry returned to work for Defendant after being hospitalized due to his Crohn's Disease. The company then terminated Mr. Ekleberry for "excessive absenteeism" that predominantly included the above-described absences caused by his Crohn's Disease.

    **C.    Plaintiff Discovers the FCRA Violation in His State Court Lawsuit**

28. On October 9, 2020, Mr. Ekleberry responded by filing a lawsuit in the Court of Common Pleas for Delaware County, Ohio, captioned *Ekleberry v. Sam Dong Ohio, Inc.*, et al., Case No. 20 CV H 10 0456 (the "State Court Lawsuit").

29. On July 1, 2021, Defendant made a document production in the State Court Lawsuit. The document production included a background check report that it had procured on Mr. Ekleberry sometime in December of 2017 (the "Background Check Report").

6

30. A true and accurate copy of the Background Check is attached as Exhibit 2 to this Complaint.

31. As the Background Check shows, Defendant used ESA to obtain the following information regarding Mr. Ekleberry: (a) any criminal history; (b) whether he was a registered sex offender; and (c) to verify and inquire into the details of his employment history via interviews of his former and then-current employer.

32. Mr. Ekleberry was deposed in the State Court Lawsuit on or about September 27, 2021. The defense attorney asked him about Exhibit 2. While Mr. Ekleberry understood that his attorneys received a copy of this report on July 1, 2021, he did not actually see it until the defense attorney asked about it at his deposition. Mr. Ekleberry was surprised by the report because he did not believe he had ever authorized something like it. He felt like Defendant had invaded his privacy and had jeopardized his employment with his then-current employer by inquiring about the details of his employment there as he was applying for a job with Defendant.

### D. Defendant's Systemic Use of the Purported Authorization

33. After receiving the document production, which included the Background Check Report, Mr. Ekleberry's counsel in the State Court Lawsuit deposed Tracy Pabst, the human resources manager for Defendant.

34. Ms. Pabst testified that all persons offered employment with Defendant must sign the Purported Authorization and have a background check report procured from ESA.

35. Ms. Pabst also testified that employee turnover is high for Defendant, and that the company hires twenty-five or so employees a year for its Ohio facility. As a result, during the five-year period for the FCRA's statute of repose, Defendant would have procured background checks on approximately 125 employees or more using the Purported Authorization.

7

## V. CLASS ACTION ALLEGATIONS

36. Mr. Ekleberry brings this action under the FCRA and for invasion of privacy on behalf of himself and as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure seeking equitable relief and damages on behalf of the following class: All persons within the United States for whom the following are true: (a) who, within the last five years, signed the Purported Authorization for Defendant; and (b) regarding whom Defendant procured a consumer report and/or investigative consumer report within the last five years using the Purported Authorization; and/or (c) who, within the last two years, discovered that Defendant had procured a consumer report and/or investigative consumer report using the Purported Authorization (the "Class").

37. While Mr. Ekleberry does not know the exact number of the people within the Class, there are likely to be at least 125 given the testimony of Tracy Pabst in the State Court Lawsuit. Given this number of employees, the class is so numerous that joinder of all members is impracticable.

38. Common questions of law and fact exist as to all members of the Class. The FCRA and invasion of privacy claims on which Mr. Ekleberry will seek class certification hinge on Defendant's Purported Authorization and background check process that violated the FCRA in the same way for all members of the Class. As a result, common questions of law and fact include without limitation the following:

    a. Whether Defendant violated 15 U.S.C. § 1681b(b)(2) when its Purported Authorization failed to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . before the report is procured or caused to be procured, in a document that

8

consists solely of the disclosure, that a report may be obtained for employment purposes."

      b.      Whether Defendant violated 15 U.S.C. § 1681d(a)(1) when its Purported Authorization failed, in writing, to "clearly and accurately disclose[] to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, mode of living, whichever are applicable, may be made . . . ."

      c.      Whether Defendant violated 15 U.S.C. § 1681d(a)(1) when it failed to provide the written summary of the rights of the consumer prepared pursuant to 15 U.S.C. § 1681g(c) at the time members of the Class signed the Purported Authorization.

      d.      Whether Defendant's violations were willful or negligent.

      e.      The appropriate class-wide injunctive relief prohibiting Defendant from continuing to violate the FCRA with its background check process.

      f.      For a willful violation, the appropriate class-wide statutory damages per member of the class under 15 U.S.C. § 1681n(a)(1)(A).

      g.      For a willful violation, the appropriate class-wide punitive damages per member of the class under 15 U.S.C. § 1681n(a)(2).

      h.      Whether Defendant's FCRA's violations invaded the privacy of Plaintiff and the members of the Class.

      i.      Whether Defendant's violations of the FCRA were highly offensive to the reasonable person.

j. The appropriate class-wide damages, including class-wide non-economic compensatory damages and punitive damages, for Defendant's FCRA violations resulting in the invasions of privacy against Plaintiff and the members of the Class.

39. Mr. Ekleberry's claims under the FCRA and for invasion of privacy are typical of the claims belonging to the Class. Mr. Ekleberry and the class members were all similarly affected by Defendant violating the FCRA in that they were all subject to Defendant's background check process.

40. Mr. Ekleberry's interests are coincident with, and not antagonistic to, those of the other members of the Class. Mr. Ekleberry is represented by counsel who are competent and experienced in the prosecution of employment litigation and class action litigation.

41. For the FCRA and invasion of privacy claims, the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

42. Class action treatment is a superior method for the fair and efficient adjudication of the controversy because such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that individual actions would cause. Further, the benefits of proceeding through the class mechanism, including providing injured persons with redress for claims that are not practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

43. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

## VI.    CLAIMS FOR RELIEF

### COUNT I

**Violations of the Fair Credit Reporting Act of 1970, 15 U.S.C. §§ 1681, et seq.**
**(Willful Noncompliance)**

**By Plaintiff, on Behalf of Himself and the Class, Against Defendant**

44.    All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

45.    Plaintiff, and the members of the Class, were at all relevant times "consumers" within the meaning of 15 U.S.C. § 1681a(c).

46.    Defendant was at all relevant times a "person" within the meaning of 15 U.S.C. § 1681a(b).

47.    Defendant violated 15 U.S.C. § 1681n when it willfully did the following:

    a.    Failed to comply with 15 U.S.C. § 1681b(b)(2) by failing to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a report may be obtained for employment purposes."

    b.    Failed to comply with 15 U.S.C. § 1681d(a)(1) by failing, in writing, to "clearly and accurately disclose[] to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, mode of living, whichever are applicable, may be made . . . ."

    c.    Failed to comply with 15 U.S.C. § 1681d(a)(1) by failing to provide the written summary of the rights of the consumer prepared pursuant to 15 U.S.C. § 1681g(c) at the time members of the Class signed the Purported Authorization.

48. As a proximate result of Defendant's actions, Plaintiff and the members of the Class have been and continue to be damaged in an amount to be determined at trial.

49. Consistent with 15 U.S.C. § 1681n(a)(2), Plaintiff, the members of the Class are entitled to punitive damages.

50. Consistent with 15 U.S.C. § 1681n(a)(3), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count I.

## COUNT II

**Violations of the Fair Credit Reporting Act of 1970, 15 U.S.C. §§ 1681, et seq.
(Negligent Noncompliance)**

**By Plaintiff, on Behalf of Himself and the Class, Against Defendant**

51. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

52. Plaintiff, and the members of the Class, were at all relevant times "consumers" within the meaning of 15 U.S.C. § 1681a(c).

53. Defendant was at all relevant times a "person" within the meaning of 15 U.S.C. § 1681a(b).

54. Defendant violated 15 U.S.C. § 1681o when it negligently did the following:

   a. Failed to comply with 15 U.S.C. § 1681b(b)(2) by failing to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a report may be obtained for employment purposes."

   b. Failed to comply with 15 U.S.C. § 1681d(a)(1) by failing, in writing, to "clearly and accurately disclose[] to the consumer that an investigative consumer report

including information as to his character, general reputation, personal characteristics, mode of living, whichever are applicable, may be made . . . ."

  c. Failed to comply with 15 U.S.C. § 1681d(a)(1) by failing to provide the written summary of the rights of the consumer prepared pursuant to 15 U.S.C. § 1681g(c) at the time members of the Class signed the Purported Authorization.

55. As a proximate result of Defendant's actions, Plaintiff and the members of the Class have been and continue to be damaged in an amount to be determined at trial.

56. Consistent with 15 U.S.C. § 1681o(a)(2), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count II.

## COUNT III

### Common Law Invasion of Privacy
### (Intrusion Upon Seclusion)

**By Plaintiff, on Behalf of Himself and the Class, Against Defendant**

57. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

58. Defendant wrongfully intruded upon the private affairs or concerns of Plaintiff and the members of the Class.

59. Defendant's wrongful intrusion was conducted in such as manner as to be highly offensive to the reasonable person.

60. As a proximate result of Defendant's actions, Plaintiff and the members of the Class have been and continue to be damaged in an amount to be determined at trial.

61. Consistent with Ohio Revised Code Section 2315.21, Plaintiff and the members of the Class are entitled to punitive damages because the actions or omissions of Defendant

demonstrate malice or aggravated or egregious fraud, and/or Defendant as principal or master knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

62. Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count III.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in his favor on all claims in this Complaint and requests the following relief:

A. Economic compensatory damages in an amount to be determined at trial;

B. Non-economic compensatory damages in an amount to be determined at trial;

C. Liquidated, treble, punitive, statutory, or other exemplary damages in an amount to be determined at trial;

D. Reinstatement or, in the alternative, front pay in an amount to be determined;

E. Reasonable attorneys' fees incurred in pursuing the claims against Defendant;

F. All costs and expenses incurred in pursuing the claims against Defendant;

G. Pre- and post-judgment interest; and

H. All other legal and equitable relief this Court and/or a jury determines is appropriate.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all claims and issues that are triable.

Respectfully submitted,

By: /s/ Jason E. Starling
Jason E. Starling (Ohio Bar No. 0082619), Trial Attorney

14

        Kevin R. Kelleher (Ohio Bar No. 0099167)
        WILLIS SPANGLER STARLING
        4635 Trueman Boulevard, Suite 100
        Hilliard, Ohio 43026
        Telephone: (614) 586-7915
        Facsimile: (614) 586-7901
        jstarling@willisattorneys.com
        kkelleher@willisattorneys.com

        John C. Camillus (Ohio Bar No. 0077435)
        LAW OFFICES OF JOHN C. CAMILLUS, LLC
        P.O. Box 141410
        Columbus, Ohio 43214
        Telephone: (614) 558-7254
        Facsimile: (614) 559-6731
        jcamillus@camilluslaw.com

        *Attorneys for Plaintiff Scott Ekleberry*

## CERTIFICATE OF SERVICE

I certify that, on May 20, 2022, I filed this document and any attachments with the Clerk of Courts via its electronic filing system, which will provide notice and a copy of the filing to all counsel of record.

        By: /s/ Jason E. Starling
        Jason E. Starling (Ohio Bar No. 0082619)

15